**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN DOE, | 26 Civ. 1553 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| CONCERN FOR INDEPENDENT LIVING, INC. | **JURY DEMAND** |
| Defendant. | |

Plaintiff **JOHN DOE**, by his attorney, James E. Bahamonde, Esq., the law firm of James E. Bahamonde, P.C., for his Complaint against Defendant **CONCERN FOR INDEPENDENT LIVING, INC.** alleges as follows:

**STATEMENT OF CLAIMS**

1. Plaintiff files this lawsuit against Defendant **CONCERN FOR INDEPENDENT LIVING, INC**. for its systemic failure to respond to Plaintiff's multiple requests for reasonable accommodations and subjected him to unlawful terms and conditions. Defendant's practice undermines the fundamental purpose of supportive housing and effectively denies Plaintiff equal opportunity to use and enjoy his dwelling.

2. Plaintiff brings this action against **CONCERN FOR INDEPENDENT LIVING, INC.** for declaratory judgment, injunctive relief, and damages on the basis of disability discrimination, failure to make a reasonable accommodation, and unlawful terms, conditions, or privileges of rental in violation of the Fair Housing Act, 42 USC § 3601, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, New York State Human Rights Law, NYS Executive Law § 296, *et seq*., and New York State Civil Rights Law § 40-c and 40-d).

3. Plaintiff seeks declaratory, injunctive and equitable relief, as well as actual,

1

nominal, compensatory damages, and fees and costs against Defendant.

4. Plaintiff seeks punitive damages against Defendant for its reckless and/or callous indifference to his rights under the Fair Housing Act and New York State Human Rights Law.

## JURISDICTION AND VENUE

5. That at all times mentioned hereinafter, Plaintiff is now, and at all times mentioned in this complaint, a resident of Suffolk, County, New York.

6. That at all times mentioned hereinafter, Defendant is a non-profit corporation organized under the laws of the State of New York, and its principal office is located in Suffolk County, New York.

7. Venue is proper in this Court because the real property is situated, and the events described herein occurred in Suffolk County.

8. Venue is proper in this Court because Plaintiff and the Defendant are both residents of Suffolk County.

9. Plaintiff invokes the jurisdiction of the Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

10. The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and the Rehabilitation Act.

11. Under 28 U.S.C. § 1367(a), the Court also has supplemental jurisdiction to hear the Plaintiff's claims under State laws.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions, giving rise to this action, including the unlawful practices alleged herein, occurred within the District.

## PARTIES

13. Plaintiff **JOHN DOE** is an adult resident of Suffolk County, New York.

14. During all relevant times, Plaintiff **JOHN DOE** has been a qualified tenant/subtenant of the subject apartment ("Premises") located in Suffolk County, New York.

15. During all relevant times, the Premises is a federal and state subsidized two-bedroom apartment located in Suffolk County, New York.

16. Plaintiff is a qualified person with disabilities as defined by the Fair Housing Act, Rehabilitation Act, and New York State Executive Law.

17. Defendant **CONCERN FOR INDEPENDENT LIVING, INC.** is a domestic not-for-profit corporation authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as Suffolk County, New York.

18. Defendant operates a supportive housing program, including scattered-site supportive housing, and functions as a housing provider and/or managing agent with respect to the Premises where Plaintiff resides.

19. Upon information and belief, and during all relevant times, Defendant holds the main lease to the Premises.

20. During all relevant times, Defendant has required Plaintiff to enter into a sublease for the Premises.

21. During all relevant times, Defendant has received federal and state financial assistance, directly or indirectly, for the scattered-site supportive housing program and/or the housing-related services at issue, rendering it a covered "program or activity" under Section 504 of the Rehabilitation Act.

## STATUTORY SCHEME

22. Agencies funded through the Scattered-Site Supportive Housing program, such as Defendant, must provide housing that is habitable, safe, well-maintained, and free from abuse.

23. Additionally, the Defendant is expressly obligated to ensure that housing is provided without discrimination based on physical and/or mental disabilities.

24. Persons, like Plaintiff, who are participating in the Scattered-Site Supportive Housing Program ('Program Participants') must adhere to the terms of a sublease they are required to enter into before moving into the Premises such as no smoking or vaping within the apartment.

25. The sublease further provides that Program Participants must refrain from making verbal threats, verbally abusive or demeaning language, aggressive, assaultive, and/or violent actions toward other Program Participants.

26. Furthermore, Program Participants are required to keep furniture in the common areas to be utilized by all participants in the household.

27. The subleasing agreement also delineates conditions for which eviction and termination of the sublease may occur, including engaging in behaviors which adversely affects the health and/or safety of other Program Participants, or adversely affects the rights of any other Program Participants in their quiet enjoyment of their housing.

28. Defendant's sublease and program materials affirms that Program Participants are entitled to housing that complies with all applicable codes and regulations, protection from abuse and mistreatment, and freedom from unlawful discrimination. These materials further provide that Defendant is responsible for maintaining habitable, safe, and proper heating.

**STATUTORY SCHEME**

29.     Under the Fair Housing Act, Rehabilitation Act, and New York State Human Rights Law, a housing provider is required to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling.

30.     Under Section 504 of the Rehabilitation Act, a federally-assisted recipient must provide qualified individuals with disabilities meaningful access to housing and housing-related benefits and must make reasonable accommodations and program adjustments as necessary.

31.     Through federal and state funding, New York State Office of Mental Health (OMH) funds for supportive housing programs for adults diagnosed with serious mental illnesses to help them overcome barriers to independent living. OMH is responsible for ensuring safe and habitable living conditions and provides essential support services, including weekly meetings with Participants, furniture placement, participant advocacy, and emergency assistance. These comprehensive services are designed to address the unique life needs of participants and prevent the loss of housing.

32.     Defendant is an organization that receives the aforementioned funding to provide supportive housing services to Plaintiff and other adults diagnosed with serious mental illnesses so that they can live independently.

**FACTUAL BACKGROUND**

33.     At all relevant times, Plaintiff has suffered from multiple mental health impairments, including major depressive disorder, anxiety disorder, Post-Traumatic Stress Disorder (PTSD), and chronic migraine headaches. These conditions substantially limit his neurological functions and major life activities, including his ability to concentrate, think, learn,

sleep, work, care for himself, and regulate emotion.

34. Plaintiff's mental health conditions substantially limit one or more of his major life activities.

35. At all relevant times, Plaintiff suffers from musculoskeletal impairments, including lumbar discogenic disease and bilateral knee osteoarthritis, which substantially limit the major life activities of walking, standing, climbing stairs, bending, working, and caring for himself.

36. At all relevant times, Plaintiff has had serious respiratory impairments, such as asthma and COPD, which substantially limit his respiratory and lung function, and his ability to breathe, walk, and use stairs.

37. At all relevant times, Defendant and its agents were aware of Plaintiff's physical and mental health conditions because he frequently advised them both orally and in writing.

38. On or about May 13, 2025, Plaintiff entered into Defendant's scattered-site supportive housing sublease with Defendant. Upon executing the sub-lease, Defendant informed him that he is required to keep staff updated about his activities and medical condition and made Plaintiff sign a medical authorization allowing Defendant access to his medical records.

39. Upon placement in a shared unit with another program participant ('Co-Tenant'), Plaintiff was immediately subjected to pervasive secondhand smoke from cigarettes and marijuana, a direct violation of the sublease agreement. Despite Plaintiff making weekly complaints, between May 2025 to the present, that these environmental hazards exacerbated and were having a detrimental impact on Plaintiff's respiratory conditions and ability to breathe, his Case Manager and the Assistant Director of Housing, Defendant failed to remedy the situation.

40. At all relevant times, Plaintiff's respiratory conditions requires him to undergo

6

bimonthly prescription shots, the use of a nebulizer every four hours, and regular medical care.

41. Plaintiff received additional medical treatment caused by the pervasive exposure to cigarettes and marijuana smoke in the apartment.

42. Plaintiff continued to make subsequent reports to Defendant and its agents concerning the Co-Tenant's habitual and repeated violations of the subleasing agreement, emphasizing the physical harm it was causing him. However, other than speaking to the Co-tenant, Defendant took no other action to resolve the problem, or did it result in any meaningful change to the Co-Tenant's behavior.

43. In addition to the hazardous smoking, the Co-tenant created a hostile housing environment by becoming confrontational and verbally abusive. The Co-Tenant routinely addressed Plaintiff in a demeaning and threatening manner, eventually escalating to explicit threats of serious bodily harm. Despite Plaintiff repeatedly informing Defendant of this intimidation, Defendant failed to take meaningful action to enforce the sublease's prohibitions against harassment and violence.

44. Between May and August 2025, Plaintiff was required to obtain medical treatment due to the deterioration of his mental health and respiratory conditions, as well as the physical strain and pain resulting from having to climb and descend the stairs to access his apartment.

45. Between May 2025 to the present, Plaintiff repeatedly requested reasonable accommodations necessitated by his disabilities. These included a transfer to a first-floor apartment to accommodate his mobility impairments, the removal of the Co-Tenant, or a transfer to a smoke-free unit, and to remedy the Co-Tenant's breaches of the sublease agreement. Defendant failed to engage Plaintiff in a timely interactive process, did not address the

reasonable accommodations requested, and took no effective corrective action to ensure the Plaintiff's safety or health.

46. In or about July 2025, Plaintiff sought to file a formal grievance regarding his declining physical and mental condition, which is directly attributable to Defendant's ongoing failure to address Plaintiff's request for a transfer to an apartment located on the first floor -- which he had begun making in May 2025, and to transfer him, or the Co-Tenant, to another apartment, as well as Defendant and its agents' failure to remedy the Co-Tenant's aforementioned breaches of the subleasing agreement. However, Vinny Laperto, Defendant's Assistant Director of Housing instructed Plaintiff he could not submit a grievance because the dozens of complaints made by Plaintiff along with the physical and mental harm caused by the Co-Tenant actions were insufficient cause.

47. Beginning in or about July 2025, each time Plaintiff reasserted his request for reasonable accommodations, Mr. Laperto explicitly intimidated and threatened to relocate Plaintiff to an apartment with a more disruptive roommate. This occurred at least a half-dozen times.

48. Defendant's continued omissions allowed the Co-Tenant to violate program rules with impunity, leaving Plaintiff with no meaningful protection within his own home.

49. On September 23, 2025, Plaintiff again informed Defendant and its agents that the Co-Tenant's hostile and verbally abusive behavior had not ceased, and Plaintiff's overall situation was not improving. However, Defendant failed to take any meaningful action to enforce the sublease's prohibitions against harassment and violence.

50. On or about October 1, 2025, Plaintiff notified Defendant that he woke up in respiratory arrest and was fighting to breathe due to marijuana smoke permeating the Premises.

51. In the beginning of October 2025, the Co-Tenant begun opening the windows of the apartment during the night. Despite Plaintiff closing them because of how cold it made the apartment, the Co-Tenant would go back and reopen them again. In fact, because of this, on or about October 3, 2025, Plaintiff notified Defendant that the interior temperature of the apartment has dropped to approximately 43°F. However, Defendant did not take any meaningful steps to prevent the Co-Tenant from opening the windows at night. In fact, to date, the Co-Tenant frequently opens the window and patio door, and lowers the thermostat temperature in the apartment.

52. The Co-Tenant has also left hostile voicemails for Plaintiff, including messages on both October 31 and November 8, 2025, telling Plaintiff to stay away from the apartment, move out, or seek a transfer. At this time, the Co-Tenant also escalated to making explicit threats of serious bodily harm toward Plaintiff. Plaintiff reported the Co-Tenant's physical threats to the police and obtain a police report.

53. On November 23, 2025, the Plaintiff sought treatment in the emergency department at Good Samaritan Hospital due to respiratory arrest because cigarette and marijuana smoke permeating the entire apartment.

54. As noted above, from May through October 2025, Plaintiff repeatedly requested reasonable accommodations, including transfer to a first-floor apartment, to remove the Co-tenant, or transfer Plaintiff to a smoke-free unit, and to enforce the terms of the subleasing agreement, including the smoke-free policy and prohibitions against harassment and threats of violence, and implement protective measures/separation due to the Co-Tenant's aforementioned intimidation and threats of violence.

55. In the first week of March 2026, Plaintiff's pulmonologist recognized the severity

9

of Plaintiff's medical condition and prescribed the use of an oxygen machine to assist with breathing while in the apartment. As of March 3, 2026, Plaintiff utilizes an oxygen machine at home to sustain basic respiratory function, underscoring the critical nature of his need for reasonable accommodations.

56. On March 3, 2026, Plaintiff informed the Co-Tenant and Mr. Laperto of his deteriorating medical condition and the need to use an oxygen machine to breathe while at home. Further, Plaintiff repeated his request to not smoke in the apartment. Nonetheless, Co-Tenant continues to smoke, and Mr. Laperto continues not taking prompt and effective corrective actions to make any meaningful changes.

57. Defendant had actual knowledge of Plaintiff's disability-related needs and the substantial likelihood of harm, yet failed to take prompt and effective corrective action within its authority. It also failed to engage Plaintiff in a timely interactive process, and discouraged Plaintiff from utilizing the housing program's grievance procedures.

58. Due to Defendant and its agents' ommissions and failure to enforce the terms of the sub-leasing agreement, the Co-Tenant has repeatedly refused to follow the housing program's expectations and has never experienced any meaningful consequences or repercussions as a result of his habitual and repeated breaches of the sub-leasing agreement.

59. Due to the unsafe circumstances caused by Defendant and its agents failure to act, Plaintiff has become accustomed to leaving the apartment each morning and not returning until late at night solely to avoid the Co-Tenant. This constitutes a substantial interference with Plaintiff's right to habitable, safe and peaceful housing.

60. After each medical appointment, and per Mr. Laperto's directions and program's policies, Plaintiff always contacts Mr. Laperto or the Case Manager to update them on his

medical condition, as well as to re-emphasize the fact that the continued deterioration of his physcial and mental health is being caused by the actions of the Co-Tenant.

61. Plaintiff has repeatedly requested copies of the sub-leasing agreement executed with Defendant, a copy of his scattered-site supportive housing application, as well as a copy of the policies and rules of the program. However, Defendant and its agents refused to provide these documents because Mr. Laperto claimed, "they are digital cannot be printed," and insist he does not need them.

62. Plaintiff has always made timely monthly lease payments.

63. Upon information and belief, Defendant has failed to adequately supervise, train and discipline its staff.

64. Defendant has failed to adequately document Plaintiff-based complaints regarding the Co-Tenant's violations of the terms of the subleasing agreement, his request for reasonable accommodations, or deteriorating medical condition.

65. Upon information and belief, Defendant has failed to adequately and contemporaneously prepare an incident report in response to the reportable complaints made by Plaintiff.

**LEGAL CLAIMS**
**FIRST CAUSE OF ACTION**
**(Violations of the Fair Housing Act, 42 USC 3604 et seq.)**

66. Plaintiff realleges and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

67. Plaintiff is an "aggrieved person" as defined in 42 U.S.C. §§ 3602(i) and 3613(a)(1)(A).

68. Plaintiff has a disability as defined in 42 U.S.C. §§ 3602(h) .

11

69. Plaintiff has a record of having a physical or mental impairment which substantially limits one or more major life activity, and Plaintiff is regarded as having such an impairment.

70. Defendant has discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a disability of that person in violation of 42 U.S.C. § 3604(f)(2).

71. Defendant has discriminated against Plaintiff by refusing to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations were/are necessary to afford Plaintiff with equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

72. The accommodations requested by Plaintiff is necessary to afford Plaintiff with equal opportunity to use and enjoy a dwelling.

73. The accommodations requested by Plaintiff does not pose an undue hardship or burden.

74. The requested accommodations do not fundamentally alter the nature of the housing provider's operation.

75. As a direct and proximate result of Defendant's acts and omissions in violation of the Fair Housing Act, Plaintiff sustained physical injuries to his respiratory system, including but not limited to shortness of breath, wheezing, chest tightness, airway irritation, and exacerbation of underlying respiratory conditions. Plaintiff experienced inflammation and impaired pulmonary function, requiring medical evaluation and treatment. These respiratory injuries caused Plaintiff physical pain, discomfort, and functional limitations, interfered with his ability to breathe normally, sleep, and engage in ordinary daily activities, and resulted in ongoing and recurring

symptoms. Plaintiff continues to suffer the effects of these respiratory injuries and is at risk of future complications, requiring continued monitoring and care.

76. As a direct and proximate result of Defendant's unlawful discrimination in violation of the Fair Housing Act, Plaintiff suffered, continue to suffer, and will in the future suffer, physical injury, exacerbation of respiratory conditions, substantial interference with his use and enjoyment of the Premises, substantial loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain-- including but not limited to great levels of fear for safety, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

77. Defendant's discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c), Plaintiff is entitled to punitive damages.

**SECOND CAUSE OF ACTION**
**(Coercion, Intimidation, Threaten, and Interference in Violation of the Fair Housing Act)**

78. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

79. The conduct of Defendant constitutes retaliation, coercion, intimidation, threatening, and interference with Plaintiff in the exercise or enjoyment of, or on account of, Plaintiff having exercised or enjoyed any right granted or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617.

80. Plaintiff engaged in a protected activity.

81. Defendant is aware of protective activity engaged by Plaintiff.

13

82. Defendant took adverse action against Plaintiff because he requested a reasonable accommodations.

83. As a direct and proximate result of Defendant's unlawful discrimination in violation of the Fair Housing Act, Plaintiff suffered, continue to suffer, and will in the future suffer, physical injury, exacerbation of respiratory conditions, substantial interference with his use and enjoyment of the Premises, substantial loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain-- including but not limited to great levels of fear for safety, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

84. Defendant's discriminatory and retaliatory acts were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c)(1), Plaintiff is entitled to punitive damages

### THIRD CAUSE OF ACTION
**(Violations of the Rehabilitation Act)**

85. Plaintiff realleges and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

86. Defendant is a "program or activity" receiving federal financial assistance within the meaning of 29 U.S.C. § 794 and is therefore subject to Section 504.

87. Plaintiff is a qualified individual with disabilities.

88. By reason of Plaintiff's disabilities, Defendant denied Plaintiff meaningful access to housing and housing-related benefits, and failed to provide reasonable accommodations and

program adjustments necessary to afford Plaintiff equal opportunity to use and enjoy the Premises.

89. Defendant's conduct constitutes intentional discrimination because Defendant was deliberately indifferent to Plaintiff's federally protected rights.

90. Defendant had actual knowledge of Plaintiff's disability-related needs and the substantial likelihood of harm because Plaintiff repeatedly notified Defendant of (i) pervasive and continuous smoke exposure; (ii) medically significant breathing crises; (iii) dangerous indoor temperatures; and (iv) escalating threats to safety.

91. Despite this notice, Defendant failed to take prompt and effective corrective action within its authority, including enforcing smoke-free rules, initiating separation or transfer procedures, coordinating with the landlord and/or co-tenant, or providing interim protective measures.

92. Defendant's inaction and delays constituted a conscious or reckless disregard of the known and substantial risk that Plaintiff would be denied meaningful access to the housing program and would suffer harm.

93. As a direct and proximate result of Defendant's deliberate indifference and discriminatory actions, Plaintiff suffered and continue to suffer substantial loss of housing opportunity. Plaintiff has also been denied, delayed, and forced to have inferior and discriminatory housing opportunities.

## FOURTH CAUSE OF ACTION
### (Violations of New York State Human Rights Law)

94. Plaintiff and Defendant are "persons" as defined in New York State Executive Law § 292(1).

95. Plaintiff's apartment is a "housing accommodation" as defined in New York State

15

Executive Law § 292(10).

96. Plaintiff has a disability as defined in New York State Executive Law § 292(21).

97. Defendant has refused to rent, lease or otherwise denied to or withheld from Plaintiff such housing accommodation because of disability in violation of New York State Executive Law §§ 296(5)(a)(1) and 296(5)(b)(1).

98. Defendant has discriminated against Plaintiff, on the basis of disability, in the terms, conditions or privileges of rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith in violation of New York State Executive Law §§ 296(5)(a)(2) and 296(5)(b)(2).

99. Defendant and its agents has aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under New York State Human Rights Law, or attempted to do so in violation of New York State Executive Law § 296(6).

100. Defendant has retaliated or discriminated against Plaintiff because it has opposed any practices forbidden under New York State Human Rights Law in violation of New York State Executive Law § 296(7).

101. Defendant has refused to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford Plaintiff with equal opportunity to use and enjoy a dwelling, including reasonable modification to common use portions of the dwelling in violation of New York State Executive Law § 296(18)(2).

102. The accommodations requested by Plaintiff are reasonable and do not impose an undue hardship.

103. As a direct and proximate result of Defendant's acts and omissions in violation of New York State Executive Law, Plaintiff sustained physical injuries to his respiratory system,

16

including but not limited to shortness of breath, wheezing, chest tightness, airway irritation, and exacerbation of underlying respiratory conditions. Plaintiff experienced inflammation and impaired pulmonary function, requiring medical evaluation and treatment. These respiratory injuries caused Plaintiff physical pain, discomfort, and functional limitations, interfered with his ability to breathe normally, sleep, and engage in ordinary daily activities, and resulted in ongoing and recurring symptoms. Plaintiff continues to suffer the effects of these respiratory injuries and is at risk of future complications, requiring continued monitoring and care.

104. As a direct and proximate result of Defendant's unlawful discrimination in violation of New York State Executive Law, Plaintiff suffered, continue to suffer, and will in the future suffer, physical injury, exacerbation of respiratory conditions, substantial interference with his use and enjoyment of the Premises, substantial loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain-- including but not limited to great levels of fear for safety, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

105. Defendant's discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under New York Executive Law § 297(10), Plaintiff is entitled to punitive damages.

**FIFTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
(Statutory Damages on Behalf of Plaintiff)

106. Plaintiff realleges and incorporates by this reference all of the allegations set forth

17

in this Complaint as if fully set forth herein.

107. On the basis of Plaintiff's disability, Defendant has violated his Civil Rights.

108. Consequently, Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law § 40-c and 40-d, in the amount of $500 for each and every violation.

109. Pursuant to NY Civil Rights law, Defendant is guilty of a class A misdemeanor.

110. Notice of the action has been served upon the Attorney-General as required by Civil Rights Law § 40-d.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

A. Plaintiff seeks declaratory judgment, declaring that the conduct of Defendant constitutes violations of the Fair Housing Act Amendments, the Rehabilitation Act, New York State Executive Law, and New York State Civil Rights Law.

B. Defendant's agents, employees, and successors, and all other persons in active concert or participation be permanently enjoined from discriminating on the basis of disability, or perceived disability, against any persons in violation of the Fair Housing Act, the Rehabilitation Act, New York State Executive Law, and New York State Civil Rights Law, including an injunction prohibiting the following:

    i. discrimination in violation of the Fair Housing Act, the Rehabilitation Act, New York State Executive Law, and New York State Civil Rights Law;

    ii. Housing discrimination based on disability;

    iii. Inferior terms, conditions, or privileges of a dwelling because of disability;

   iv. Aiding, abetting, coercing, intimidating, threatening, and discriminating based on disability;

 C. Permanent injunction requiring Defendant to

   i. Engage Plaintiff in an interactive process to determine the necessary reasonable accommodations;

   ii. Make the necessary reasonable accommodations;

   iii. Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

   iv. Train all of Defendant's employees who work in the Scattered-Site Supportive Housing Program regarding reasonable accommodations, unlawful terms and conditions, and the rights of the disabled persons as it relates to housing;

 D. Have the court retain jurisdiction over the Defendant until the Court is satisfied that their unlawful practices, acts and omissions no longer exist and will not reoccur.

 E. Award such damages to Plaintiff as will fully compensate for injuries caused by Defendant's unlawful practices in violation of the Fair Housing Act and Rehabilitation Act;

 F. Award such damages to Plaintiff as will fully compensate for injuries caused by Defendant's unlawful practices in violation of New York State Executive Law;

 G. Award punitive damages to Plaintiff for Defendant's violation of the Fair Housing Act, the Rehabilitation Act, and New York State Executive Law;

 H. Award statutory damages in the amount of $500 to Plaintiff for each of Defendant's violation of New York State Civil Rights Law;

 I. Award such damages for the physical injuries to Plaintiff's respiratory system, including but not limited to respiratory distress, impaired breathing, airway inflammation,

19

exacerbation of pre-existing respiratory conditions, pain and physical discomfort, and related functional limitations; together with damages for past, present, and future medical expenses, ongoing treatment and monitoring, and such other relief as is necessary to fully compensate Plaintiff for the continuing and permanent nature of his respiratory injuries.

   J. Award Plaintiff reasonable attorney's fees, costs, and expenses incurred in prosecuting this action; and

   K. Grant Plaintiff such other further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demand a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.


Dated: March 14, 2026


        **LAW OFFICES OF JAMES E. BAHAMONDE, P.C.**


       By: /s/ James E. Bahamonde
        James E. Bahamonde
        2501 Jody Court
        North Bellmore, NY 11710-1940
        Tel. (646) 290-8258
        james@civilrightsny.com

       *Attorney for Plaintiff*