**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| A. S.,<br><br>                                    Plaintiff,<br><br>            v.<br><br>CONCERN FOR INDEPENDENT LIVING, INC.<br><br>                                    Defendant. | 26 Civ. 1553<br><br>**FIRST AMENDED COMPLAINT**<br><br><br><br>**JURY DEMAND** |

Plaintiff **A. S.**, an individual with serious mental health conditions, through his attorney, James E. Bahamonde, Esq., of the law firm of James E. Bahamonde, P.C., for his Complaint against Defendant **CONCERN FOR INDEPENDENT LIVING, INC.** alleges as follows:

**STATEMENT OF CLAIMS**

1.      Plaintiff A.S., a person with physical and mental health impairments, files this lawsuit against Defendant **CONCERN FOR INDEPENDENT LIVING, INC**. for its systemic failure to respond to Plaintiff's multiple requests for reasonable accommodations, denial of meaningful access to and opportunity to receive equal and effective benefits or services, and subjected him to unlawful terms and conditions. Defendant's practices undermine the fundamental purpose of supportive housing and effectively deny Plaintiff an equal opportunity to use and enjoy his dwelling.

2.      Plaintiff seeks a declaratory judgment, injunctive relief, and damages on the basis of disability discrimination, failure to make a reasonable accommodation, and unlawful terms, conditions, or privileges in violation of the Fair Housing Act, 42 USC § 3601, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, New York State Human Rights Law, NYS Executive Law § 296, *et seq*., and New York State Civil Rights

1

Law § 40-c and 40-d.

1.      Plaintiff also seeks actual, nominal, compensatory damages, damages for lost housing opportunities, and attorney's fees and costs against Defendant.

2.      Plaintiff seeks punitive damages against Defendant for its reckless and/or callous indifference to his rights under the Fair Housing Act and New York State Human Rights Law.

## JURISDICTION AND VENUE

3.      That at all times mentioned hereinafter, Plaintiff is now, and at all times mentioned in this complaint, a resident of Suffolk, County, New York.

4.      That at all times mentioned hereinafter, Defendant is a non-profit corporation organized under the laws of the State of New York, and its principal office is located in Suffolk County, New York.

5.      Venue is proper in this Court because the real property is situated, and the events described herein occurred, in Suffolk County.

6.      Venue is proper in this Court because Plaintiff and the Defendant are both residents of Suffolk County.

7.      Plaintiff invokes the jurisdiction of the Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

8.      The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and the Rehabilitation Act.

9.      Under 28 U.S.C. § 1367(a), the Court also has supplemental jurisdiction to hear the Plaintiff's claims under State laws.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a

2

substantial part of the events, or omissions, giving rise to this action, including the unlawful practices alleged herein, occurred within the District.

## PARTIES

11.     Plaintiff **A.S.** is an adult resident of Suffolk County, New York.

12.     During all relevant times, Plaintiff has been a qualified tenant/subtenant of the subject apartment ("Premises") located in Suffolk County, New York.

13.     During all relevant times, the Premises is a federal and state subsidized two-bedroom apartment located in Suffolk County, New York.

14.     Plaintiff is a qualified person with disabilities as defined by the Fair Housing Act, Rehabilitation Act, and New York State Executive Law.

15.     Defendant **CONCERN FOR INDEPENDENT LIVING, INC.** is a domestic not-for-profit corporation authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as Suffolk County, New York.

16.     Defendant operates a supportive housing program, including scattered-site supportive housing, and functions as a housing provider and/or managing agent with respect to the Premises where Plaintiff resides.

17.     Upon information and belief, and during all relevant times, Defendant holds the main lease to the Premises.

18.     During all relevant times, Defendant has required Plaintiff to enter into a sublease for the Premises in order to take advantage of Defendant's program.

19.     During all relevant times, Defendant has received federal and state financial assistance, directly or indirectly, for the scattered-site supportive housing program and/or the housing-related services at issue, rendering it a covered "program or activity" under Section 504

3

of the Rehabilitation Act.

## STATUTORY SCHEME

20.     Agencies funded through the Scattered-Site Supportive Housing program, such as Defendant, must provide housing that is habitable, safe, well-maintained, and free from abuse.

21.     Additionally, the Defendant is expressly obligated to ensure that housing is provided without discrimination based on physical and/or mental disabilities.

22.     Persons like Plaintiff, who are participating in the Scattered-Site Supportive Housing Program ('Program Participants'), must adhere to the terms of the sublease they are required to execute before moving into the Premises. For example, one term prohibits residents from smoking or vaping within an apartment.

23.     Another term of the sublease proscribes Program Participants from making verbal threats, using verbally abusive or demeaning language, engaging in aggressive behavior, and committing assaultive and/or violent acts toward other Program Participants.

24.     Furthermore, Program Participants are required to keep furniture in the common areas for use by all participants sharing an apartment.

25.     The sublease also delineates conditions for which eviction and termination of the sublease may occur, including engaging in behaviors which adversely affects the health and/or safety of other Program Participants, or adversely affects the rights of any other Program Participants in their use and quiet enjoyment of the apartment.

26.     Defendant's sublease and program materials affirm that Program Participants are entitled to housing that complies with all applicable local, state and federal codes and regulations, protection from abuse and mistreatment, and freedom from unlawful discrimination. These materials further provide that Defendant is responsible for maintaining habitable and safe

4

housing, as well as proper heating.

## STATUTORY SCHEME

27.     Under the Fair Housing Act, Rehabilitation Act, and New York State Human Rights Law, a housing provider is required to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling.

28.     Under Section 504 of the Rehabilitation Act, a federally-assisted recipient must provide qualified individuals with disabilities meaningful access to housing and housing-related benefits and must make reasonable accommodations and program adjustments as necessary.

29.     Through federal and state funding, the New York State Office of Mental Health (OMH) provides funding for supportive housing programs for adults diagnosed with serious mental illnesses to help them overcome barriers to independent living. OMH is responsible for ensuring safe and habitable living conditions and provides essential support services, including weekly meetings with Participants, furniture placement, participant advocacy, and emergency assistance. These comprehensive services are designed to address the unique life needs of participants and prevent the loss of housing.

30.     Defendant is an organization that receives the aforementioned funding to provide supportive housing services to Plaintiff and other adults diagnosed with serious mental illnesses so that they can live independently.

## FACTUAL BACKGROUND

31.     At all relevant times, Plaintiff has suffered from multiple mental health impairments, including major depressive disorder, anxiety disorder, Post-Traumatic Stress Disorder (PTSD), and chronic migraine headaches. These conditions substantially limit his

neurological functions and major life activities, including his ability to concentrate, think, learn, sleep, work, care for himself, and regulate emotion.

32.    Plaintiff's mental health conditions substantially limit one or more of his major life activities.

33.    At all relevant times, Plaintiff suffers from musculoskeletal impairments, including lumbar discogenic disease and bilateral knee osteoarthritis, which substantially limit his ability to  walk, stand, climb stairs, bend, work, and care for himself.

34.    At all relevant times, Plaintiff has had serious respiratory impairments, including asthma and COPD, which substantially limit his respiratory and lung function, as well as his ability to breathe, walk, and use stairs.

35.    At all relevant times, Defendant and its agents were aware of Plaintiff's physical and mental health conditions because he frequently advised them both orally and in writing.

36.    On or about May 13, 2025, Plaintiff entered into Defendant's scattered-site supportive housing sublease with Defendant. Upon executing the sublease, Defendant informed him that he is required to keep staff updated about his activities and medical condition and required Plaintiff to sign a medical authorization allowing Defendant access to his medical records.

37.    Upon placement in a shared unit with another program participant ('Co-Tenant'), Plaintiff was immediately subjected to pervasive secondhand smoke from the Co-Tenant smoking tobacco cigarettes and marijuana -- a direct violation of the sublease agreement. Despite Plaintiff making weekly complaints between May 2025 to the present to his case manager and the Assistant Director of Housing, both employed by Defendant, that the smoke  was having a detrimental impact on Plaintiff's respiratory conditions and ability to breathe, neither Defendant,

6

nor the aforementioned employees remedied the situation.

38.    At all relevant times, Plaintiff's respiratory conditions require him to undergo bimonthly prescription shots, the use of a nebulizer every four hours, and regular medical checkups.

39.    Plaintiff required additional medical treatment caused by his exposure to cigarette and marijuana smoke in the apartment.

40.    Plaintiff continued to make subsequent reports to Defendant and its agents concerning the Co-Tenant's habitual and repeated violations of the subleasing agreement, emphasizing the physical harm it was causing him. However, other than speaking to the Co-tenant, Defendant took no other action to resolve the problem, or did it result in any meaningful change to the Co-Tenant's behavior.

41.    In addition to the hazardous secondhand smoke, the Co-Tenant created a hostile housing environment by becoming confrontational and verbally abusive toward Plaintiff. The Co-Tenant routinely addressed him in a demeaning and threatening manner, eventually escalating to the Co-Tenant making explicit threats of serious bodily harm to Plaintiff. Despite Plaintiff repeatedly informing Defendant of the Co-Tenant's behavior, Defendant failed to take any meaningful action against the Co-Tenant to enforce the sublease's prohibitions against harassment and violence.

42.    Between May and August 2025, Plaintiff was required to obtain medical treatment due to the deterioration of his mental health and respiratory conditions, as well as the physical strain and pain resulting from having to climb and descend the stairs to access his apartment.

43.    Between May 2025 to the present, Plaintiff repeatedly made requests for

7

reasonable accommodations from Defendant that were necessitated by his disabilities. These included a request to transfer to a first-floor apartment in order to accommodate his mobility impairments, the removal of the Co-Tenant, or in lieu of that, transferring Plaintiff to a smoke-free unit, and to remedy the Co-Tenant's breaches of the subleasing agreement. However, Defendant failed to engage Plaintiff in a timely interactive process, and did not address the reasonable accommodations requested, took no effective corrective action to ensure the Plaintiff's safety or health.

44.    In or about July 2025, Plaintiff sought to file a formal grievance with Defendant regarding his declining physical and mental condition, directly attributable to Defendant's ongoing failure to address Plaintiff's requests for reasonable accommodations, as set forth above. However, Vinny Laperto, Defendant's Assistant Director of Housing, instructed Plaintiff that he could not submit a grievance because the dozens of complaints made by Plaintiff, along with the physical and mental harm caused by the Co-Tenant's actions, were 'insufficient cause'.

45.    Beginning in or about July 2025, Plaintiff reasserted his request for reasonable accommodations nearly a half a dozen times, and on each occasion, Mr. Laperto explicitly intimidated Plaintiff and threatened to relocate him to an apartment with a more disruptive roommate.

46.    Defendant's continued omissions allowed the Co-Tenant to violate program rules with impunity, leaving Plaintiff with no meaningful protection within his own home.

47.    On September 23, 2025, Plaintiff again informed Defendant and its agents that the Co-Tenant's hostile and verbally abusive behavior had not ceased, and Plaintiff's overall situation was not improving. However, Defendant failed to take any meaningful action to enforce the sublease's prohibitions against harassment and violence.

8

48.     On or about October 1, 2025, Plaintiff notified Defendant that he woke up in respiratory arrest and was fighting to breathe due to marijuana smoke permeating the Premises.

49.     In the beginning of October 2025, the Co-Tenant begun opening the windows of the apartment during the night. Despite Plaintiff closing them because of how cold it made the apartment, the Co-Tenant would go back and reopen them again. In fact, because of this, on or about October 3, 2025, Plaintiff notified Defendant that the interior temperature of the apartment has dropped to approximately 43°F. However, Defendant did not take any meaningful steps to prevent the Co-Tenant from opening the windows at night. In fact, to date, the Co-Tenant frequently opens the window and patio door and lowers the thermostat temperature in the apartment.

50.     The Co-Tenant has also left hostile voicemails for Plaintiff, including messages on both October 31 and November 8, 2025, telling Plaintiff to stay away from the apartment, move out, or seek a transfer. At the same time, the Co-Tenant also escalated to making explicit threats of serious bodily harm toward Plaintiff. Plaintiff reported the Co-Tenant's physical threats to the police and  made out a report.

51.     On November 23, 2025, the Plaintiff sought treatment in the emergency department at Good Samaritan Hospital due to respiratory arrest because of cigarette and marijuana smoke that was permeating the entire apartment.

52.     As noted above, from May through October 2025, Plaintiff repeatedly requested reasonable accommodations, including transfer to a first-floor apartment, to remove the Co-tenant, or transfer Plaintiff to a smoke-free unit, and to enforce the terms of the subleasing agreement, including the smoke-free policy and prohibitions against harassment and threats of violence, and implement protective measures/separation due to the Co-Tenant's aforementioned

9

intimidation and threats of violence.

53.     In the first week of March 2026, Plaintiff's pulmonologist recognized the severity of Plaintiff's medical condition and prescribed the use of an oxygen machine to assist with breathing while in the apartment. As of March 3, 2026, Plaintiff utilizes an oxygen machine at home to sustain basic respiratory function, underscoring the critical nature of his need for reasonable accommodations.

54.     On March 3, 2026, Plaintiff informed the Co-Tenant and Mr. Laperto of his deteriorating medical condition and the need to use an oxygen machine to breathe while at home. Plaintiff also informed the Co-Tenant and Mr. Laperto of the fire hazard caused if the Co-Tenant continues to smoke in the apartment. Nonetheless, Co-Tenant continues to smoke, and Mr. Laperto has failed to take any corrective action, or make any meaningful changes to Plaintiff's living situation.

55.     Defendant had actual knowledge of Plaintiff's disability-related needs and the substantial likelihood of harm, yet failed to take prompt and effective corrective action within its authority. It also failed to engage Plaintiff in a timely interactive process, and through an employee, actively discouraged Plaintiff from utilizing the housing program's grievance procedures.

56.     Due to Defendant and its agents' acts, ommissions and failure to enforce the terms of the sub-leasing agreement, the Co-Tenant has repeatedly refused to follow the housing program's expectations and has never experienced any meaningful consequences or repercussions as a result of his habitual and repeated breaches of the sub-leasing agreement.

57.     Due to the unsafe circumstances caused by Defendant and its agents' failure to act, Plaintiff has become accustomed to leaving the apartment each morning and not returning

10

until late at night solely to avoid the Co-Tenant. This constitutes a substantial interference with Plaintiff's right to habitable, safe and peaceful housing.

58.     After each medical appointment, and per Mr. Laperto's directions and program's policies, Plaintiff always contacts Mr. Laperto or his Case Manager to update them on his medical condition, as well as to re-emphasize the fact that the continued deterioration of his physical and mental health is being caused by the actions of the Co-Tenant and Defendant's failure to enforce the terms and conditions of the program and subleasing agreement.

59.     Plaintiff has repeatedly requested copies of the sub-leasing agreement executed with Defendant, a copy of his scattered-site supportive housing application, as well as a copy of the policies and rules of the program. However, Defendant and its agents refused to provide these documents because Mr. Laperto claimed, "they are digital cannot be printed," and insist Plaintiff does not need them.

60.     Plaintiff has always made timely monthly lease payments.

61.     Upon information and belief, Defendant has failed to adequately supervise, train and discipline its staff.

62.     Defendant has failed to adequately document Plaintiff's complaints regarding the Co-Tenant's violation of the terms of the subleasing agreement, his request for reasonable accommodations, and his deteriorating medical condition.

63.     Upon information and belief, Defendant has failed to adequately and contemporaneously prepare an incident report in response to the numerous reportable complaints made by Plaintiff.

11

## LEGAL CLAIMS
## FIRST CAUSE OF ACTION
### (Violations of the Fair Housing Act, 42 USC § 3604 *et seq*.)

64.    Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

65.    Plaintiff is an "aggrieved person" as defined in 42 U.S.C. §§ 3602(i) and 3613(a)(1)(A).

66.    Plaintiff has a disability as defined in 42 U.S.C. §§ 3602(h) .

67.    Plaintiff has a record of having a physical or mental impairment which substantially limits one or more major life activity, and Plaintiff is regarded as having such an impairment.

68.    Defendant has discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a disability of that person in violation of 42 U.S.C. § 3604(f)(2).

69.    Defendant has discriminated against Plaintiff by refusing to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations were/are necessary to afford Plaintiff with equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

70.    The accommodations requested by Plaintiff are necessary to afford Plaintiff with equal opportunity to use and enjoy a dwelling.

71.    The accommodations requested by Plaintiff do not pose an undue hardship or burden.

72.    The requested accommodations do not fundamentally alter the nature of the housing provider's operation.

73.    As a direct and proximate result of Defendant's acts and omissions in violation of the Fair Housing Act, Plaintiff sustained physical injuries to his respiratory system, including but not limited to shortness of breath, wheezing, chest tightness, airway irritation, and exacerbation of underlying respiratory conditions. Plaintiff experienced inflammation and impaired pulmonary function, requiring medical evaluation and treatment. These respiratory injuries caused Plaintiff physical pain, discomfort, and functional limitations, interfered with his ability to breathe normally, sleep, and engage in ordinary daily activities, and resulted in ongoing and recurring symptoms. Plaintiff continues to suffer the effects of these respiratory injuries and is at risk of future complications that require continued monitoring and care.

74.    As a direct and proximate result of Defendant's unlawful discrimination in violation of the Fair Housing Act, Plaintiff suffered, continue to suffer, and will in the future suffer, physical injury, exacerbation of respiratory conditions, substantial interference with his use and enjoyment of the Premises, substantial loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain -- including but not limited to great levels of fear for safety, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

75.    Defendant's discriminatory actions were intentional, willful, and with reckless disregard for the rights of Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c), Plaintiff is entitled to punitive damages.

13

**SECOND CAUSE OF ACTION**
**(Coercion, Intimidation, Threaten, and Interference in Violation of the Fair Housing Act,**
**42 USC § 3617 *et seq.*)**

76.    Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

77.    The conduct of Defendant constitutes retaliation, coercion, intimidation, threatening, and interference with Plaintiff in his exercise or enjoyment of, or on account of, Plaintiff having exercised or enjoyed any right granted or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617.

78.    Plaintiff engaged in a protected activity.

79.    Defendant is aware of the protected activity engaged in by Plaintiff.

80.    Defendant took adverse action against Plaintiff because he requested reasonable accommodations.

81.    As a direct and proximate result of Defendant's unlawful discrimination in violation of the Fair  Housing Act, Plaintiff suffered, continues to suffer, and will in the future suffer, physical injury, exacerbation of respiratory conditions, substantial interference with his use and enjoyment of the Premises, substantial loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain -- including but not limited to great levels of fear for safety, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

82.    Defendant's discriminatory and retaliatory acts were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in

14

knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c)(1), Plaintiff is entitled to punitive damages.

### THIRD CAUSE OF ACTION
### (Violations of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*)

83. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

84. Defendant employs 15 or more persons.

85. Defendant is a "program or activity" receiving federal financial assistance within the meaning of 29 U.S.C. § 794.

86. Plaintiff is a qualified individual with a disability under Section 504.

87. Solely by reason of Plaintiff's disabilities, Defendant denied Plaintiff meaningful access to housing and housing-related benefits, and failed to provide reasonable accommodations and program adjustments necessary to afford Plaintiff equal opportunity to use and enjoy the Premises.

88. Solely by reason of Plaintiff's disabilities, Defendant has not offered Plaintiff the opportunity to receive benefits or services that are equal to that offered to persons without disabilities.

89. Solely by reason of Plaintiff's disabilities, Defendant has not provided the benefit or services in a manner that does not limit, or has the effect of limiting, the participation of Plaintiff.

90. Solely by reason of Plaintiff's disabilities, Defendant has not provided benefits or services that are equal to that offered to persons without disabilities.

91. Defendant's conduct constitutes intentional discrimination because Defendant was deliberately indifferent to Plaintiff's federally protected rights.

15

92.    Defendant had actual knowledge of Plaintiff's disability-related needs and the substantial likelihood of harm because Plaintiff repeatedly notified Defendant of (i) inaccessible entry into apartment; (ii) pervasive and continuous smoke exposure; (iii) medically significant breathing crises; (iv)  dangerous indoor temperatures; (v) continuous refusal to respond to and make multiple reasonable accommodations; (vi) the physical and mental health injuries caused by refusing to make multiple reasonable accommodations; and (vii) escalating threats to Plaintiff's safety.

93.    Despite this notice, Defendant failed to take prompt and effective corrective action within its authority, including enforcing smoke-free rules, initiating separation or transfer procedures, coordinating with the landlord and/or Co-Tenant, or providing interim protective measures.

94.    Upon information and belief, Defendant has not conducted a self-evaluation as defined under the implementing regulations of the Rehabilitation Act.

95.    Defendant has demonstrated a deliberate indifference to the harm to Plaintiff's federally protected rights under Section 504 was substantially likely, and failed to act upon that likelihood.

96.    Defendant's inaction and delays constituted, and continue to constitute, a conscious or reckless disregard of the known and substantial risk that Plaintiff is being denied meaningful access to the housing program and suffers harm.

97.    The acts and omissions of Defendant have caused, and will continue to cause, Plaintiff to suffer irreparable harm for which there is no adequate remedy at law.

98.    As a direct and proximate result of Defendant's deliberate indifference and discriminatory actions, Plaintiff suffered and continues to suffer a substantial loss of housing

16

opportunity. Plaintiff has also been denied, delayed, and forced to have inferior and discriminatory housing opportunities.

## FOURTH CAUSE OF ACTION
### (Violations of New York State Human Rights Law)

99.     Plaintiff and Defendant are "persons" as defined in New York State Executive Law § 292(1).

100.    Defendant's apartment is a "housing accommodation" as defined in New York State Executive Law § 292(10).

101.    Plaintiff has a disability as defined in New York State Executive Law § 292(21).

102.    Defendant has refused to rent, lease or otherwise denied to or withheld from Plaintiff such housing accommodation because of disability in violation of New York State Executive Law §§ 296(5)(a)(1) and 296(5)(b)(1).

103.    Defendant has discriminated against Plaintiff on the basis of disability in the terms, conditions or privileges of rental or lease of any such housing accommodation, or in the furnishing of facilities or services in connection therewith in violation of New York State Executive Law §§ 296(5)(a)(2) and 296(5)(b)(2).

104.    Defendant and its agents have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under New York State Human Rights Law, or attempted to do so in violation of New York State Executive Law § 296(6).

105.    Defendant has retaliated and/or discriminated against Plaintiff because it has engaged in practices forbidden under New York State Human Rights Law, and in violation of New York State Executive Law § 296(7).

106.    Defendant has refused to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford Plaintiff with

17

equal opportunity to use and enjoy a dwelling, including reasonable modification to common use portions of the dwelling, in violation of New York State Executive Law § 296(18)(2).

107. The accommodations requested by Plaintiff are reasonable and do not impose an undue hardship.

108. As a direct and proximate result of Defendant's acts and omissions in violation of New York State Executive Law, Plaintiff sustained physical injuries to his respiratory system, including but not limited to shortness of breath, wheezing, chest tightness, airway irritation, and exacerbation of underlying respiratory conditions. Plaintiff experienced inflammation and impaired pulmonary function, requiring medical evaluation and treatment. These respiratory injuries caused Plaintiff physical pain, discomfort, and functional limitations, interfered with his ability to breathe normally, sleep, and engage in ordinary daily activities, and resulted in ongoing and recurring symptoms. Plaintiff continues to suffer the effects of these respiratory injuries and is at risk of future complications, requiring continued monitoring and medical care.

109. As a direct and proximate result of Defendant's unlawful discrimination in violation of New York State Executive Law, Plaintiff suffered, continues to suffer, and will in the future suffer, physical injury, exacerbation of respiratory conditions, substantial interference with his use and enjoyment of the Premises, substantial loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain – including, but not limited to, great levels of fear for safety, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

110. Defendant's discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendant

18

also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under New York Executive Law § 297(10), Plaintiff is entitled to punitive damages.

### FIFTH CAUSE OF ACTION
**(Violation of New York State Civil Rights Law)**
(Statutory Damages on Behalf of Plaintiff)

111.   Plaintiff realleges and incorporates by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

112.   On the basis of Plaintiff's disability, Defendant has violated his Civil Rights.

113.   Consequently, Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law § 40-c and 40-d, in the amount of $500 for each and every violation.

114.   Pursuant to NY Civil Rights law, Defendant is guilty of a class A misdemeanor.

115.   Notice of the action has been served upon the New York State Attorney General as required by Civil Rights Law § 40-d.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

A.   Plaintiff seeks a declaratory judgment, declaring that the conduct of Defendant constitutes violations of the Fair Housing Act Amendments, the Rehabilitation Act, New York State Executive Law, and New York State Civil Rights Law.

B.   Defendant's agents, employees, and successors, and all other persons in active concert or participation be permanently enjoined from discriminating on the basis of disability, or perceived disability, against any persons in violation of the Fair Housing Act, the Rehabilitation

19

Act, New York State Executive Law, and New York State Civil Rights Law, including an injunction prohibiting the following:

i. discrimination in violation of the Fair Housing Act, the Rehabilitation Act, New York State Executive Law, and New York State Civil Rights Law;

ii. Housing discrimination based on disability;

iii. Inferior terms, conditions, or privileges of a dwelling because of disability;

iv. Affording Plaintiff an opportunity to receive benefits or services that are equal to that offered to persons without disabilities;

v. Aiding, abetting, coercing, intimidating, threatening, and discriminating based on disability;

C. Permanent injunction requiring Defendant to:

i. Engage Plaintiff in an interactive process to determine the necessary reasonable accommodations;

ii. Make the necessary reasonable accommodations;

iii. Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

iv. Afford Plaintiff an opportunity to receive benefits or services that are equal to that offered to persons without disability;

v. Provide Plaintiff the benefit and services in a manner that is not limited, or has the effect of limiting, his participation;

vi. Train all of Defendant's employees who work in the Scattered-Site Supportive Housing Program regarding reasonable accommodations, unlawful

20

terms and conditions, and the rights of the disabled persons as it relates to supportive housing;

D.      Have the Court retain jurisdiction over the Defendant until the Court is satisfied that their unlawful practices, acts and omissions no longer exist and will not reoccur.

E.      Award such damages to Plaintiff as will fully compensate him for injuries caused by Defendant's unlawful practices in violation of the Fair Housing Act and Rehabilitation Act;

F.      Award such damages to Plaintiff as will fully compensate him for injuries caused by Defendant's unlawful practices in violation of New York State Executive Law;

G.      Award punitive damages to Plaintiff for Defendant's violation of the Fair Housing Act, the Rehabilitation Act, and New York State Executive Law;

H.      Award statutory damages in the amount of $500 to Plaintiff for each of Defendant's violation of New York State Civil Rights Law;

I.      Award such damages for the physical injuries to Plaintiff's respiratory system, including but not limited to respiratory distress, impaired breathing, airway inflammation, exacerbation of pre-existing respiratory conditions, pain and physical discomfort, and related functional limitations; together with damages for past, present, and future medical expenses, ongoing treatment and monitoring, and such other relief as is necessary to fully compensate Plaintiff for the continuing and permanent nature of his respiratory injuries.

J.      Award Plaintiff reasonable attorney's fees, costs, and expenses incurred in prosecuting this action; and

K.      Grant Plaintiff such other further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.

21

Dated: March 23, 2026

**LAW OFFICES OF JAMES E. BAHAMONDE, P.C.**

By: /s/ James E. Bahamonde

      James E. Bahamonde
      2501 Jody Court
      North Bellmore, NY 11710-1940
      Tel. (646) 290-8258
      james@civilrightsny.com

      *Attorney for Plaintiff*

22